UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MODESTO HERNANDEZ,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | CIVIL ACTION NUMBER:<br>:<br>3:10-cv-01333 (VLB) |
| BERLIN NEWINGTON ASSOCIATES, LLC,<br>    *Defendant*. | :<br>:<br>September 22, 2016<br>: |

### MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS AND OVERRULING IN PART AND SUSTAINING IN PART DEFENDANT'S OPPOSITION

Before the Court is Plaintiff Modesto Hernandez's motion for attorneys' fees and costs in connection with his successful action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, against Defendant Berlin Newington Associates, LLC ("BNA"). Hernandez seeks $229,405 in attorneys' fees—calculated using the lodestar method of multiplying the reasonable hourly rates of his legal representatives by the number of hours reasonably expended. BNA challenges the reasonableness of the hourly rates and the hours expended. The Court awards $214,169.75 in attorneys' fees, ruling that requested hourly rates are reasonable, that an across-the-board reduction is not appropriate, and that some of BNA's objections have merit while others do not and thus. Hernandez also requests $8,685.50 in costs.[1] BNA raises three objections, but none have merit.

---

[1] Hernandez's motion and memorandum seek $8,678.00 in costs, but the Court has reached a different conclusion after adding the itemized expenses provided by Hernandez. The Court relies on this number, construing the statements in the motion and memoranda as typographical errors.

1

The Court nonetheless reduces the costs to $8,610.50. Accordingly, for the reasons explained below, the Court grants in part and denies in part the motion for attorneys' fees and costs and overrules in part and sustains in part BNA's opposition.

## Factual and Procedural Background

In August 2010, Hernandez, who suffers from Polio and requires the use a wheelchair to ambulate, brought this ADA action alleging that he encountered numerous architectural barriers on BNA's property. ECF No. 5 (Compl.). Over the next five years, the parties litigated whether BNA had violated the ADA, and after it recognized that it had, the parties engaged in largely unnecessarily protracted litigation over whether BNA had removed the impermissible architectural barriers.[2] ECF No. 117-3 (Counsel Decl.) at ¶¶ 17–72. Of particular relevance, BNA rebuffed Hernandez's numerous good-faith efforts to achieve an earlier and equitable settlement. *Id.* at ¶¶ 17–51. In November 2015, on the eve of trial, the parties reached a settlement after Court intervention on all substantive issues in dispute but failed to reach an agreement regarding attorneys' fees and costs. ECF No. 114 (Notice of Settlement).

---

[2] BNA disputes this characterization, arguing that the litigation was "straightforward" and not at all aggressive. ECF No. 118 at (Opp'n) at 2. This assertion is unsupported and belied by the record. The action was referred for an early settlement conference, and discovery was stayed until the parties had an opportunity to do so. ECF Nos. 27, 31. The parties agreed that the law and regulations were clear and that they could resolve the case by conducting a walk through with their respective experts. *See* ECF No. 56 at ¶ 11(e). And based on the Court's recollection of a telephonic conference held on November 2, 2015, *see* ECF No. 104, the case achieved a settlement only when BNA's attempts to further stall were rebuffed.

Hernandez now moves for attorneys' fees in the amount of $229,405.00. ECF Nos. 117 (Mot.); 119 (Reply). He calculates attorneys' fees by multiplying the reasonable hourly rate by the number of hours reasonably expended. ECF No. 117-1 (Mem.) at 13–19. Hernandez seeks an hourly rate of $375 for Attorney Louis Mussman; $375 for Attorney Brian Ku; $325 for Attorney M. Ryan Casey; $300 for Attorney John Kaloidis; and $100 for Paralegal R. Sarmiento. In support, Hernandez details the qualification and experience of his attorneys, *see* ECF Nos. 117-3 (Decl.) at ¶¶ 83–111, 117-6 (Biographies), 117-7 (Curriculum Vitae); provides declarations from two local attorneys including Kaloidis, ECF No. 117-3 at ¶¶ 144–150 (Kaloidis Decl.), 117-10 (Smith Decl.); and cites numerous cases from this District, *see* ECF No. 117-1 at 17–18. He further asserts that Mussman spent 360.45 hours; that Ku spent 81 hours; that Casey spent 137.5 hours; that Kaloidis spent 43.75 hours; and that Sarmiento spent 34.4 hours.[3] ECF No. 119-1 (Second Itemization) at 28. In support, Hernandez submits a detailed itemization of the amount of time spent by each attorney and paralegal on each particular task; the itemization was compiled through the use of contemporaneous billing records. ECF Nos. 117-3 (Decl.) at ¶ 75; 117-5 (First Itemization); 119-1 (Second Itemization). Hernandez does not argue for an upward or downward departure to the presumptively-reasonable-fee calculation; he argues that the calculation is appropriate because he pleaded only one cause of action and was successful on

---

[3] The Court subtracted the hours spent on the extension motion from the second itemization. *See* ECF No. 119-1 at Lines 356–57, 359–64. Hernandez concedes that these hours are not compensable, *see* ECF No. 119 at 8 n.17, but includes them in the itemization, *see* ECF No. 119-1 at Lines 356–57, 359–64.

3

that cause of action. ECF No. 117-1 (Mem.) at 18–19.

BNA challenges the reasonableness of the hourly rates and argues that the hours expended should be reduced by 35% because the detailed billing records are excessive, redundant, and otherwise unnecessary. ECF No. 118 at 4–11. In support of these contentions, BNA argues that: (1) "plaintiff's counsel submitted limited evidence to support the claim that the requested billing rates are reasonable"; (2) "it's unclear from [plaintiff counsel's] submissions how many ADA access cases they have handled over the years and whether any of them have proceeded to trial"'; and (3) one recent District of Massachusetts case awarded Mussman only $300 per hour.[4] BNA also requests an across-the-board reduction of all of the hours expended based on the following individual line-item objections: (a) duplicative review of court orders; (b) unnecessary communication between outside counsel; (c) excessive briefing on mootness, a motion for sanctions, a motion for summary judgment, a motion to set aside, a motion for reconsideration, and a motion for attorneys' fees; (d) unnecessary *pro hac vice* application; and (e) attorney entries for activities that should have been performed by a paralegal.[5]

Hernandez also moves for costs in the amount of $8,685.50.[6] ECF No. 117. He first seeks taxable costs pursuant to 28 U.S.C. § 1920 in the amount of $774.40. ECF No. 117-8. In support, he provides an itemization of costs and receipts for each of those invoices. *Id.* He next seeks costs pursuant to 28 U.S.C. § 12205 in

---

[4] BNA cites three other cases, but those cases do not support BNA's request to reduce the reasonable hourly rate to $300 per hour.

[5] As explained in footnote three, Hernandez conceded to one of BNA's objection. ECF No. 119 at 8 n.17. Hence, that objection is not addressed.

[6] *Supra*, fn.1.

4

the amount of $7,911.10.  ECF No. 117-9.  In support, he provides an itemization of costs and receipts for each of those invoices.  *Id.*

BNA does not challenge the calculation of costs pursuant to Section 1920. *See* ECF No. 118.  Instead, it raises the three following challenges to the calculation of costs pursuant to Section 12205: (1) attorney travel expenses because "Plaintiff provides no explanation as to why Attorney Mussman had to travel to Connecticut, when Attorney Kaloidis, local counsel, who went to the initial settlement conference, easily could have performed those functions"; (2) the engineering expert's fees of $200 per hour should be reduced to $175 for actual work and $87.50 for travel time; and (3) the financial expert should not be compensable because BNA "is unaware of the work completed by [the financial expert] because he was not disclosed as a witness."  *Id.* at 12–14.

## Legal Analysis

A.  <u>Attorneys' Fees</u>

The ADA entitles a prevailing party to recover reasonable attorney's fees. The statute provides in relevant part:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . .

42 U.S.C. § 12205.  The ADA is a fee-shifting statute, and the Court has discretion to award attorney's fees to a prevailing party in an ADA action. *See, e.g.*, *E*Trade Fin. Corp. v. Deutsche Bank AG*, 374 F. App'x 119, 124 (2d Cir.2010). If the civil rights plaintiff is the prevailing party, attorney's fees and costs should normally be awarded "unless special circumstances would render such an award unjust."

5

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation and internal quotation marks omitted); *accord Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 n.4 (2001) (applying *Hensley* to § 12205 of the ADA).

Where, as here, the action is founded on federal-question jurisdiction, federal law governs the question of attorney's fees. *See Franco v. Better Way Wholesale Autos, Inc.*, 2016 WL 3064051, at *1 (D. Conn. May 31, 2016) (citing *In re Citigroup S'holder Derivative Litig.*, 2013 WL 4441511, at *3 n.4 (S.D.N.Y. Aug. 19, 2013), *aff'd sub nom. Moskal v. Pandit*, 576 F. App'x 33 (2d Cir. 2014)). The Second Circuit applies the presumptively-reasonable-fee standard—that is, multiplying the reasonable hourly rate by the hours reasonably expended, commonly referred to as the lodestar method. *See McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 417 n.2 (2d Cir. 2010) (observing preference for jettisoning the term "lodestar"). To do so, a district court "engage[s] in a four-step process: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." *Silver v. Law Offices Howard Lee Schiff, P.C.*, 2010 WL 5140851, at *1 (D. Conn. Dec. 16, 2010) (citations omitted)). The prevailing party bears the burden of showing the presumptively reasonable fee. *See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994). Once established, the opposing party bears the burden of justifying a reduction. *See U.S. Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989) ("We note that a party advocating the

reduction of the lodestar amount bears the burden of establishing that a reduction is justified.").

### 1. Reasonable Hourly Rate

A reasonable hourly rate is "the rate prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 208 (2d Cir. 2005) (citations and internal quotation marks omitted). The best evidence of the prevailing market rate is local counsel's normal billing rate, but a fee applicant may also demonstrate the prevailing market rate by offering affidavits of counsel with similar experience. *See* 10 MOORE'S FEDERAL PRACTICE § 54.190[2][b][i][B], [C] (Matthew Bender 3d ed.). A district court may take judicial notice of the rates awarded in similar cases and may rely on its own familiarity with the rates prevailing in the district. *See Farbotko*, 433 F.3d at 208. In determining the hourly rates, the district court should also consider the factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[7] *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 522 F.3d 184 (2d Cir. 2008). In essence, a court should consider all the case-specific variables to set the reasonable rate. *See McDaniel*, 595 F.3d at 422.

The Court rules that the requested hourly rates are reasonable in light of the

---

[7] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

7

following findings of fact.[8]   ECF No. 117-3 at ¶¶ 17–72.  BNA's litigation strategy required Hernandez to invest significant time and energy into this case, and despite BNA's strategy, Hernandez successfully settled the action.  ECF No. 117-3 at ¶¶ 17–72.  Hernandez's counsel has extensive experience in successfully litigating civil rights cases.  ECF Nos. 117-3 (Decl.) at ¶¶ 83–111, 117-6 (Biographies), 117-7 (Curriculum Vitae).  Moreover, Hernandez Plaintiff is no novice to the ADA litigation arena.  Indeed, he has brought numerous ADA cases in this district in which he was represented by Attorney Kaloidis, as he is in this case. *See Hernandez v. W2007 Equity Inns Realty, LLC*, 10-cv-1334-SRU; *Hernandez v. Plaza at Buckland Hills, LLC*, 10-cv-1336-JBA; *Hernandez v. FW CT-Corbins Corner Shopping Center, LLC*, 10-cv-01337-RNC;   *Hernandez v. AFP 100 Corp.*, 3:10-cv-01338-JCH; *Hernandez v. Pavilions At Buckland Hills, L.L.C.*, 10-cv-01339-MRK.  Thus, the Plaintiff has extensive knowledge of the experience, reputation, and ability of his attorneys.  He also has a longstanding professional relationship with Attorney Kloidis, the law firm of Ku & Mussman, and other attorneys and law firms practicing ADA law.

Beyond that, the requested rate is on par with the prevailing rate in this District for attorneys with similar experience in similar types of cases.  *See Harty v. Bull's Head Realty*, 2015 WL 1064630, at *9 (D. Conn. Mar. 11, 2015) ("[T]he Court has conducted a review of recent attorney's fee awards for private counsel who prosecute plaintiff's rights cases in this District and has determined that $375 is a

---

[8] The Court also rules that the paralegal's $100 hourly rate is reasonable. *See Franco*, 2016 WL 3064051, at *2 (awarding $150 per hours for paralegal services absent objection).

more appropriate hourly rate."); *see also* ECF No. 117-3 at ¶¶ 144–150 (Kaloidis Decl.), 117-10 (Smith Decl.).  Mussman and Ku have sought hourly rates less than those normally charged.  ECF No. 117-3 at ¶ 150.  Title III cases are viewed as undesirable because monetary awards are unavailable, *see Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir.) (observing that monetary damages not available), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004), and because the opportunity for attorney's fees are limited, *see Buckhannon*, 532 U.S. at 602 (rejecting the "catalyst theory").

BNA raises three objections to the hourly rates requested by Mussman, Ku, and Casey.[9]  These objections lack merit.  BNA first argues that "plaintiff's counsel submitted limited evidence to support the claim that the requested billing rates are reasonable."  ECF No. 118 at 5.  The Court disagrees.  Affidavits from attorneys practicing in this District are one of the most effective ways to demonstrate the prevailing market rate, and this evidence is further supported by the Court's familiarity and experience, including its prior review conducted in *Bull's Head*.  BNA next argues that "it's unclear from [plaintiff counsel's] submissions how many ADA access cases they have handled over the years and whether any of them have proceeded to trial."  *Id.*  But there's no requirement that fee applicant provide the

---

[9] BNA also states that "the fees sought by plaintiff are excessive and outrageous given the straightforward nature of this matter."  But this assertion contained in the procedural background suggesting that attorneys' fees should be reduced based on the length of litigation and the novelty and difficulty of the case is not sufficiently developed.  *See Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir. 1998) (observing that insufficiently briefed arguments are waived).  Even if this argument were not waived, no reduction is warranted because the other factors outweigh any reduction based on lack of time and labor or novelty and difficulty.

exact number of prior cases.  A district court need only have a general understanding of a fee applicant's experience to compare that experience with other practitioners in the District.  In any event, BNA's implication that counsel here lacks experience is belied by BNA's assertion to the contrary. *See, e.g., id.* at 7 ("Thus, the time spent by plaintiff's four attorneys, *with a combined 52 years of experience, primarily with ADA matters*, is excessive, redundant[,] and unnecessary." (emphasis added)).  BNA lastly relies on a District of Massachusetts case, but a single case from outside this District does not persuade the Court that its own experience and familiarity with the rates *in this District* is erroneous.

> 2. <u>Hours Reasonably Expended</u>

A fee applicant must also document the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "Although there is a preference that documentation be in the form of contemporaneously prepared time records, the majority rule is that such record are not an absolute prerequisite to a fee award and that hours may be proved by a reconstruction of time records or by other evidence adequate under the circumstances."  10 MOORE'S FEDERAL PRACTICE § 54.190[2][a][i] (Matthew Bender 3d ed.).  Where, as here, a fee applicant satisfies his burden by providing detailed itemization of the hours expended reconstructed through contemporaneous billing records, *see* ECF Nos. 117-3 (Decl.) at ¶ 75; 117-5 (First Itemization); 119-1 (Second Itemization), a district court must conduct "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended," *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994).  Having conducted such review, the Court

identifies no hours to be redundant, unnecessary, or excessive other than those addressed below.

Rather than undertaking a comprehensive hour-by-hour critique of the bill at issue, BNA seeks an across-the-board reduction of 35% because it has identified a dozen or so line-item objections. ECF No. 118 at 10. But "the preferred method is for the court to conduct an hour-by-hour review of all the time claimed and to disallow those hours not reasonably expended on the litigation." 10 MOORE'S FEDERAL PRACTICE § 54.190[2][a][i] (Matthew Bender 3d ed.). The Second Circuit has approved across-the-board reductions only where the fee motion is so voluminous as to make an hour-by-hour review impractical. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) ("In similar cases with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application."). Other courts have approved of this method when the documentary support is so vague and ambiguous to make line-item deductions impossible. *In re North*, 12 F.3d 252, 257 (D.C. Cir. 1994) ("In other cases in which we were not provided appropriate contemporaneous time records, we have imposed a ten percent reduction on the final fee award."). Neither of these circumstances apply here, so the Court adopts the preferred method of calculation and addresses each of BNA's objections below.

Finally, to the extent BNA seeks an across-the-board reduction because it believes the total fee is disproportionate, the Court notes that BNA undertook a litigation strategy unnecessarily delaying case resolution, thereby increasing the

time Hernandez's attorneys needed to spend and the total fee charged. Despite BNA's strategy, Hernandez successfully settled the action on the eve of trial, but only after Court intervention. Thus, to the extent BNA's objection is founded in sticker shock, it is at least in part a consequence of its own litigation strategy.

>    a.  *Duplicative Review of Court Orders*

BNA has raised five specific objections, and the Court happily addresses those objections. BNA first argues that "[b]y way of example, plaintiff's 20 page billing entry submission reflects standard Court orders reviewed <u>each</u> by Attorneys Mussman, Ku, and Casey." ECF No. 188 at 8. BNA identifies only one instance in which this occurred. *Id.* Hernandez replies that only 1.1 hours are attributable to a second or third attorney's review of a court order. ECF No. 119 at 4 n.9, 5–6.

Essentially, BNA objects to the fact that more than one of Hernandez's attorneys who entered an appearance reviewed the Court's orders. The Court declines to strike the 1.1 hours billed. The filing of an appearance is not a mere formality: all attorneys who have filed an appearance as officers of the court and representatives of a litigant have a duty to be at least aware of the case status and review court orders, even where those orders are perfunctory. *Cf. Hilmon Co. (V.I.) Inc. v. Hyatt Int'l,* 899 F.2d 250 (3d Cir. 1990) ("[A]ttorneys have an affirmative obligation to research the law and to determine if a claim on appeal is utterly without merit and may be deemed frivolous."). The duties that an appearing attorney owes to their client and to the court cannot be discharged by agreement with another attorney. *In re Mitchell*, 901 F.2d 1179, 1188 (3d Cir. 1990) (citing *Matter of Withey,* 537 F.2d 324 (9th Cir.1976)). In any event, some of the orders

reviewed by more than one attorney were complex orders. *See, e.g.*, ECF No. 119-1 at Lines 377, 398, 402. BNA's objection to duplicative reviews of court orders is overruled.

### b. Unnecessary Communication between Outside Counsel

BNA next objects to the "approximately 32.5 hours of correspondence between Attorneys Mussman, Ku, and Casey" as "excessive" given their combined experience.[10] ECF No. 118 at 8. The Court agrees. While some communication between co-counsel is understandable, Hernendez bears the burden of proving that these hours were reasonably expended. The majority of the entries fail to detail the content of the interoffice communications. ECF No. 119-1. Without this information, the Court has no basis for determining whether these hours were reasonable. *See Kelly v. U.S. Bank*, 2011 WL 2934023, at *2 (D. Or. June 21, 2011), *report and recommendation adopted*, 2011 WL 2911902 (D. Or. July 14, 2011) (striking communications between counsel "[f]or lack of any basis upon which to conclude that the communications in question were reasonably incurred"). The Court strikes the 32.3 hours for internal communications between outside counsel (13.7 hours for Mussman; 6.8 hours for Ku, and 11.8 hours for Casey).[11]

### c. Excessive Briefing

BNA objects to the hours expended briefing the following issues: mootness

---

[10] Hernandez replies that the objection is moot because this time was reduced by 50%. ECF No. 119 at 7. But it's unclear how anything other than a 100% reduction moots the issue.

[11] BNA raised two objections to lines 360 and 362. ECF No. 119-1. Because the Court already credited one of these objections, it does not subtract out those lines again.

(30.2 hours), motion for sanctions (26.5 hours), motion for summary judgment (52.2 hours[12]), motion to set aside (7.4 hours[13]), motion for reconsideration (16.1 hours), motion for attorneys' fees (58.9 hours).  ECF No. 118 at 9–10.  The basis for each of these objections appears to be the same: an experienced attorney should not have taken this long on briefing any of these issues.  *Id.*  After reviewing the court filings relevant to each of the issues, the Court disagrees and believes the hours expended are reasonable.  BNA provides no specific reason (and offers no support for its conclusory assertion) why, in this particular instance, an experienced litigator should have spent less time briefing these issues.  *See Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) ("We decline to consider petitioner's further argument that the hours charged by respondents' counsel were unreasonable.  As noted above, petitioner failed to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged, . . . or the facts asserted in the affidavits submitted by respondents' counsel. It therefore waived its right to an evidentiary hearing in the District Court." (internal citation omitted)).  The Court declines to reduce the number of hours expended on briefing.

        d.    *Drafting* Pro Hac Vice *Motion*

BNA moves to strike the 1.7 hours spent on drafting and filing a *pro hac vice* motion because having an out-of-state attorney file a notice of appearance was

---

[12] The parties disagree about whether the time amounts to 52.3 or 52.2 hours. The Court need not resolve this discrepancy because it finds that either amount of time is reasonable.

[13] The parties disagree about whether the time amounts to 7.4 or 7.2 hours. The Court need not resolve this discrepancy because it finds that either amount of time is reasonable.

unnecessary and because this motion should not have taken so long to prepare. ECF No. 118 at 11.  Hernandez replies that "[t]he 1.7 hours expended on the *pro hac vice* application pales in comparison to time that would have been incurred by adding an addition law firm."  ECF No. 119 at 10.

Hernandez's argument misses the point.  Adding outside counsel in this instance may have been more efficient in the event a fourth attorney appearance was necessary, but Hernandez fails to show that why a fourth attorney (local or outside) needed to file an appearance.  In any event, the Court agrees that amount of time spent on the motion was excessive.  *See Bull's Head*, 2015 WL 1064630, at *10 ("Furthermore, 1.5 hours is an excessive amount of time to spend on such a boilerplate motion.").  The Court strikes the 1.7 hours (.6 hours for Mussman, .1 hours for Ku, and 1 hour for Casey).  The Court also strikes the .3 hours the paralegal spent paralegal's work on the *pro hac vice* motion.  *See* ECF No. 119-1 at Lines 578–79.

   e. *Activities for Paralegal*

BNA argues that "Plaintiff's billing submission is also scattered with entries performed by experienced litigators with years of experience, which could have and should have been handled by a paralegal."  ECF No. 118 at 9.  Specifically, BNA objects to .7 hours for a PACER search, 2.7 hours for organizing a trial notebook, 1.2 hours for outlining and adding documents to a trial notebook, 3.9 hours for drafting an opposition to a motion for extension, .3 hours for case assignment correspondence, 1.2 hours for reviewing and organizing file for entry into the case. The Court declines to strike the PACER search, trial preparation, and drafting the

opposition to the motion for an extension of time because these activities are properly handled by an attorney, not a paralegal. The Court, however, strikes "corrsp re: case assignment" and "reviewed and organized file for entry into case" because those entries are too vague and do not appear to be compensable (whether or not an attorney or paralegal should be performing those activities). The Court this strikes 1.5 hours from Casey's hours. *See* ECF No. 119-1 at Lines 321, 323.

3. <u>Multiplication</u>

As explained in the following chart, the presumptively-reasonable-fee award amounts to $214,169.75.

| Attorney | Rate | Claimed | Conceded | Communications | PHV | Paralegal | Subtractions | Total | Rate x Hours |
|---|---|---|---|---|---|---|---|---|---|
| Mussman | $375 | 361.4 | .2 | 13.7 | 0.6 | 0 | 14.5 | 346.9 | $130,088.50 |
| Ku | $375 | 81.2 | .95 | 6.8 | 0.1 | 0 | 7.85 | 73.35 | $27,506.25 |
| Casey | $325 | 144.2 | 6.7 | 11.8 | 1 | 1.5 | 21 | 123.2 | $40,040.00 |
| Kalodidis | $300 | 43.75 | 0 | 0 | 0 | 0 | 0 | 43.75 | $13,125.00 |
| Sarmiento | $100 | 34.4 | 0 | 0 | 0.3 | 0 | 0.3 | 34.1 | $3,410.00 |
|  |  |  |  |  |  |  |  |  | $214,169.75 |

4. <u>Appropriate Adjustments</u>

Once the district court has calculated the presumptively reasonable fee, the Court may properly depart upwards or downwards. *See Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("The courts may then adjust this lodestar calculation by other factors."). Any adjustment must be based on reasons not already considered in arriving at the presumptively-reasonable-fee calculation. *See* 10 MOORE'S FEDERAL PRACTICE § 54.190[3][a] (Matthew Bender 3d ed.). "[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *See U.S. Football League v. National Football League*, 887 F.2d 408,

413 (2d Cir. 1989).  In this case, no party seeks a reduction from the above-calculated fee for a reason not already taken into consideration, so the Court makes no adjustment.

B.     Costs

The ADA permits a prevailing party to recover costs.  42 U.S.C. § 12205. "The award of costs [under Section 12205] may include taxable costs pursuant to 28 U.S.C. § 1920."  *Spalluto v. Trump Int'l Hotel & Tower*, 2008 WL 4525372, at *17 (S.D.N.Y. Oct. 2, 2008).  In addition to those expenses traditionally awarded under Section 1920, Section 12205 also permits the recovery for mailing, copies, and attorney travel, *Haynes v. City of Montgomery*, 2008 WL 4495711, at *13 (M.D. Ala. Oct. 6, 2008), as well as expert fees and travel, *Spalluto*, 2008 WL 4525372, at *17. "The fee applicant bears the burden of adequately documenting and itemizing the costs requested."  *Spence v. Ellis,* 2012 WL 7660124, at *8 (E.D.N.Y. Dec.19, 2012) (quoting *Pennacchio v. Powers,* 2011 WL 2945825, at *3 (E.D.N.Y. July 1, 2011).

Defendant does not object to the costs typically subsumed by Section 1920 (but which the Court awards pursuant to Section 12205).  After independently examining those costs, the Court awards them with the exception of the *pro hac vice* fees.  As explained in *LaBombard v. Winterbottom*, 2015 WL 9450838, at *2 (N.D.N.Y. Dec. 23, 2015), the Second Circuit has not determined whether these fees are compensable and other circuits are split on the issue.  But this Court need not resolve the issue because *pro hac vice* fees, whether awarded pursuant to Sections 1920 or 12205, are not compensable in this specific instance because, as already discussed, Hernandez has not explained why a fourth attorney (local or outside)

needed to file an appearance. The Court strikes that $75.00 fee and awards $699.40 for the costs typically subsumed by Section 1920 pursuant to Section 12205.

The Court has also examined the additional costs sought pursuant to Section 12205 and awards them in full after independently reviewing the submissions. BNA raises three objections, but none hold water. First, BNA argues that attorney travel should not be awarded because local counsel would have been adequate. ECF No. 118 at 12. The Court disagrees because the expenses pertained to travel incurred for the purpose of making essential court appearances, and given Mussman's experience, the choice of outside counsel was reasonable. The failure to reimburse outside counsel for these trips would deprive a litigant from seeking outside counsel when necessary. *See Disabled Patriots of Am., Inc. v. Reserve Hotel*, Ltd., 659 F.Supp.2d 877, 890 & n.5 (N.D. Ohio 2009) (awarding travel expenses in calculating hours expended because "[p]laintiffs are generally entitled to counsel of their choice" but observing the some courts apportion under costs). Second, BNA contends that the engineering expert's fee was inflated. ECF No. 13. In light of the engineering expert's credentials and experience, *see* ECF No. 58-10, the Court finds the fee to be reasonable, and one case from another district does not convince the Court otherwise. The Court also declines to reduce the engineering expert's fee for travel because his travel time was too short (a flight from BWI to BDL) to expect him to bill for other work. ECF No. 117- 9 at 2. Finally, Hernandez relied on the financial expert in support of his motion for summary judgment. ECF No. 58-17.

The following chart explains the Court's calculations of costs.

|  | Sought | Detailed | Subtractions | Total |
|---|---|---|---|---|
| **Section 1920** | $774.40 | $774.40 | $75 | $699.40 |
| **Section 12205** | $7,903.60 | $7,911.10 | 0 | $7,911.10 |
| **Total** |  |  |  | $8,610.50 |

## Conclusion

For the foregoing reasons, the Court awards attorneys' fees in the amount of $214,169.75 and costs in the amount of $8,610.50.

**IT IS SO ORDERED.**

                                                                                                                 _____/s_____
                                                          Hon. Vanessa L. Bryant
                                                          United States District Judge

**Order dated in Hartford, Connecticut on September 22, 2016.**